

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| DIANA MEDENDORP,<br>PLAINTIFF, | § | |
| | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:17-CV-742-A |
| | § | |
| NANCY A. BERRYHILL,<br>ACTING COMMISIONER OF<br>SOCIAL SECURITY,<br>DEFENDANT. | § | |
| | § | |
| | § | |
| | § | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C § 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate are as follows:

FINDINGS AND CONCLUSIONS

I.   STATEMENT OF THE CASE

Plaintiff Diana Medendorp ("Medendorp") filed this action pursuant to 42 U.S.C. §§405(g), 1383(c)(3) for judicial review of a final decision of the Commissioner of Social Security denying her claims for a period of disability and disability insurance benefits ("DIB") under Title II. In May 2009, Medendorp filed an application for DIB. (Transcript ("Tr.") 23, 137–139.) Medendorp originally alleged a disability onset date of September 30, 2008 but later amended the date to September 29, 1998. (Tr. 23, 137, 153, 1136.) Her claim was denied initially and on reconsideration. (Tr. 23, 61-66, 69-72.) Pursuant to Medendorp's request, an administrative law judge ("ALJ") held a hearing on November 22, 2010. (Tr. 23, 38–58, 73.) The ALJ issued an unfavorable decision on December 9, 2010. (Tr. 23–32.) On June 1, 2012, the Appeals Council

1

denied Medendorp's request for review.  (Tr. 4–8.)  Medendorp then appealed to the United States District Court.  On January 28, 2014, the Court remanded the case to the Commissioner for further administrative action, finding that substantial evidence did not support the ALJ's residual functional capacity ("RFC") determination as the "ALJ impermissibly relied on his own medical opinion to determine the effects of Medendorp's impairments on her ability to perform work." (Tr. 1222; *see* Tr. 1211–1225, 1228.)

Upon remand, the ALJ held a second hearing on November 18, 2015.  (Tr. 1136; *see* Tr. 1161–1187.)  The ALJ issued another unfavorable decision on December 21, 2015.  (Tr. 1136–46.)  On February 6, 2017, the Appeals Council denied Medendorp's request for review, leaving the ALJ's December 21, 2015 decision as the Commissioner's final administrative decision.  (Tr. 1121–1126, 1133–1146.)  Medendorp subsequently filed this civil action seeking review of the ALJ's decision.

## II.    STANDARD OF REVIEW

Disability insurance is governed by Title II of the Social Security Act ("SSA") and numerous regulatory provisions.  *See* 42 U.S.C. §§ 401–433; 20 C.F.R. Pt. 404.  The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity.  42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).  To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed.  20 C.F.R. § 404.1520.[1]

---

[1] The Court notes that several of the regulations and applicable social security rulings ("SSRs") governing social security cases were recently amended or rescinded.  *See, e.g.*, 82 Fed. Reg. 5844-01, 2017 WL 168819 (F.R. Jan. 18, 2017); 81 Fed. Reg. 66138-01, 2016 WL 5341732 (F.R. Sept. 26, 2016).  These new rules generally apply to claims filed either on or after January 17, 2017 or March 27, 2017, depending on the regulation.  *Id.*  In addition, the Court is generally to apply those rules that were in effect at the time the ALJ issued their decision.  *See, e.g.*, 81 Fed. Reg. 66138-01, fn. 1 ("We expect that Federal courts will review our final decisions using the rules that were in effect

First, the claimant must not be presently working at any substantial gainful activity. 20 C.F.R. § 404.1520(b). Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. *See* 20 C.F.R. § 404.1510; *see also* §§ 404.1571–.1576. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing") in the appendix to the regulations. 20 C.F.R. § 404.1520(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* § 404.1520(f). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experiences. *Id.* § 404.1520(g); *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Carey*, 230 F.3d at 135; *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.* However, if the Commissioner meets this burden, it is up to the claimant to show that he cannot perform the alternate work suggested. *Id.*; *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence

---

at the time we issued the decisions.") Thus, any cites (unless otherwise noted) will be to the old rules that are applicable to claims, such as this one, that were filed and decided by the Commissioner prior to 2017.

in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988) (per curiam). An ALJ's decision is not subject to reversal, even if substantial evidence in the record would have supported the opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ. *Dollins v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. Jun. 2, 2009). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F. 3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if substantial evidence is present. *Harris*, 209 F.3d at 417 (citing *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)); *Hollis*, 837 F.2d at 1383 (citing *Neal v. Bowen*, 829 F.2d 528, 530 (5th Cir. 1987)).

### III.    ISSUES

In her brief, Medendorp presents the following issues:

A.  Whether substantial evidence supports the ALJ's residual functional capacity ("RFC") determination; and

B.  Whether the ALJ erred in his treatment of two of the medical source statements of Medendorp's treating physician, Scott Duemler, M.D. ("Dr. Duemler"), because he failed to consider the factors set forth in 20 C.F.R. § 404.1527(c) as to one and failed to even consider the other.

(Plaintiff's Brief ("Pl.'s Br.") at 1, 5, 7.)

### IV.    ALJ DECISION

In his December 21, 2015 decision, the ALJ found, as relevant here, that Medendorp met the disability insured status requirements of the SSA through September 30, 1998 and that she had

4

not engaged in any substantial gainful activity since September 29, 1998, the alleged amended onset date of her disability. (Tr. 1138.) The ALJ further found that Medendorp suffered from the following severe impairments: (1) status post lumbar hemilaminectomy x2, (2) status post Stamey procedure, and (3) obesity. (Tr. 1138.) Next, the ALJ held that none of Medendorp's impairments or combination of impairments met or equaled the severity of any impairment in the Listing. (Tr. 1139.) As to Medendorp's RFC, the ALJ stated:

> Through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she could sit or stand at her option; could not climb, crawl, kneel, or squat; could occasionally stoop and crouch; could not climb ropes or scaffolds, operate foot controls, or work at heights; must have worked in a climate controlled environment; could not work around dangerous machinery nor be exposed to vibrating machines; and retained the capacity to understand, remember, and carry out only simple instructions, make simple decisions, attend and concentrate for extended periods, accept instructions, and respond appropriately to changes in routine work settings. Sit/stand option means the ability to sit and/or stand for a total of 8 hours in an 8-hour day. The individual has the choice of changing positions at will and performing the job in either position. The claimant retained the ability to perform said residual functional capacity on a regular and continuing basis. (SSR 96-8p.)

(Tr. 1139–1140 (emphasis omitted).) The ALJ found, based on his RFC assessment, that Medendorp was unable to perform any of her past relevant work. (Tr. 1145.) However, based on the testimony of the vocational expert ("VE"), the ALJ found Medendorp capable of performing other jobs existing in significant numbers in the national economy. (Tr. 1145–1146.) Accordingly, the ALJ concluded that Medendorp was not disabled. (Tr. 1146.)

## V. DISCUSSION

### A. RFC and Substantial Evidence

Medendorp first complains that the ALJ's RFC determination is erroneous because it is not supported by substantial evidence. (Pl.'s Br. at 1, 5–7.) Specifically, she states:

> In the instant case, the ALJ does not clearly base the RFC on any medical statements, CE reports, or ME Testimony. The decision rejects the SAMC doctor's

5

opinions.  The ALJ rejects the opinions of Dr. Deumler [sic].  The ALJ accepts Dr.
Francis' RFC of light work, but adds the additional sit/stand option to the RFC, and
adds more restrictive postural limitations.

.  .  .  .

The only medical evidence that arguably supports the ALJ's findings, is the
testimony of [Anthony E. Francis, M.D. ("Dr. Francis")].  Dr. Francis is a non-
examining physician[ ].  The reports of non-examining doctors, taken alone, do not
constitute substantial evidence.  Without any supporting medical evidence, the
ALJ's RFC is not sustainable.  Even Dr. Francis' testimony differs from the RFC
provided in the unfavorable decision.

The case law is clear that the RFC cannot be based only on raw evidence
and the ALJ's law opinion about "raw medical evidence."  In this case, then, the
ALJ, by formulating an RFC based on his own medical expertise, rather than on
medical expert evidence, "succumbed to the temptation to play doctor."  The
Plaintiff is prejudiced by the ALJ's RFC error.  Remand is appropriate.

(Pl.'s Br. at 6–7 (internal citations omitted).)

RFC is what an individual can still do despite his limitations.[2]  SSR 96-8p, 1996 WL

374184, at *2 (S.S.A. July 2, 1996).  It reflects the individual's maximum remaining ability to do

sustained work activity in an ordinary work setting on a regular and continuing basis.  *Id.*; *see*

*Myers v. Apfel,* 238 F.3d 617, 620 (5th Cir. 2001) (per curiam).  A regular and continuing basis is

an eight-hour day, five days a week, or an equivalent schedule.  SSR 96-8p, 1996 WL 374184, at

*2.  RFC is not the least an individual can do, but the most.  *Id.*  The RFC is a function-by-function

assessment, with both exertional and nonexertional[3] factors to be considered, and is based upon all

of the relevant evidence in the case record.  *Id.* at *3–5.  The responsibility for determining a

---

[2] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the
assessment of the claimant's RFC.  *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005).  The Commissioner
assesses the RFC before proceeding from step three to step four.  *Id.*

[3] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting,
standing, walking, lifting, carrying, pushing, and pulling."  SSR 96-8p, 1996 WL 374184, at *5.  Each function must
be considered separately, but the final RFC assessment may combine activities.  *Id.*  Nonexertional capacity "considers
all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental
limitations.  *Id.* at *6.

claimant's RFC lies with the ALJ. *Id.* at *2. *See Villa v. Sullivan*, 895 F.2d 1019, 1023–24 (5th

Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a

regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996

WL 374184, at *7.

     In making an RFC assessment, the ALJ must consider all symptoms, including pain, and

the extent to which these symptoms can be reasonably accepted as consistent with objective

medical evidence and other evidence. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186,

at *1 (S.S.A. July 2, 1996); SSR 96-8p, 1996 WL 374184, at *5. The ALJ must also consider

limitations and restrictions imposed by all of an individual's impairments, even impairments that

are not severe. *Id.* The ALJ is permitted to draw reasonable inferences from the evidence in

making his decision, but presumptions, speculation, and supposition do not constitute evidence.

*See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), *superseded by* SSR 91-7c, 1991 WL

231791, at *1 (S.S.A. Aug. 1, 1991) (superseded only to the extent the SSR discusses the former

procedures used to determine disability in children). The ALJ is not required to incorporate

limitations in the RFC that he did not find supported in the record. *See Muse v. Sullivan*, 925 F.2d

785, 790 (5th Cir. 1991) (per curiam) (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir.

1987)) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may

choose whichever physician's diagnosis is most supported by the record.") In reviewing the ALJ's

decision, a finding of no substantial evidence is appropriate only if no credible evidentiary choices

or medical findings support the decision. *Boyd*, 239 F.3d at 704 (quoting *Harris,* 209 F.3d at 417)

(footnotes and quotation marks omitted).

     Moreover, a "claimant is eligible for benefits only if the onset of the qualifying medical

impairment [or combination of impairments] began on or before the date the claimant was last

insured." *Ivy v. Sullivan,* 898 F.2d 1045, 1048 (5th Cir. 1990). "Claimants bear the burden of establishing a disabling condition before the expiration of their insured status." *Id.* (citing *Milam v. Bowen,* 782 F.2d 1284 (5th Cir. 1986)).

As stated above, the ALJ in this case found that Medendorp had the RFC to perform light work with the following limitations: (1) sit or stand at her option; (2) no climbing, crawling, kneeling or squatting; (3) could stoop and crouch occasionally; (4) no climbing ropes or scaffolds, operating foot controls or working at heights; (5) must work in a climate controlled environment; (6) could not work around dangerous machinery or be exposed to vibrating machines; (6) could understand, remember, and carry out only simple instructions and make simple decisions; (7) could attend and concentrate for extended periods; and (8) could accept instructions and respond appropriately to changes in work settings. (Tr. 1139–40.) Contrary to Medendorp's arguments, substantial evidence clearly supports such RFC determination. To begin with, the ALJ, *inter alia*, noted Medendorp's involvement in a March 1992 car accident, which resulted in a disc herniation and two corrective surgeries, one in August 1993 and one in 1995. (Tr. 1141; *see, e.g.*, Tr. 563, 565–566, 904–905, 909–910, 976–977, 996–997, 999, 1006–1007, 1010–1012, 1014.) The ALJ further indicated that, by January 1998, approximately eight months prior to her alleged onset date in September 1998, Medendorp reported some low back pain, which she treated with Motrin, and her neurologic examination was symmetric in all four extremities. (Tr. 1141; *see* 828–829.) In addition, the ALJ noted that Medendorp underwent surgery for stress urinary incontinence, cystocele, and rectocele in February 1997. (Tr. 1141; *see, e.g.*, Tr. 681–685, 690–692, 850, 852–853.) The medical records indicated that Medendorp "did nicely" in the months following surgery and reported that she was "quite happy with the results." (Tr. 1141; *see, e.g.*, Tr. 850, 852–853.)

In addition, the ALJ noted that there "is very little evidence to support the claimant's complaints through the date last insured" and that "[m]ost of the medical evidence addresses the period after the date last insured and is not relevant to a finding of disability through the date last insured." (Tr. 1142.) Furthermore, the ALJ stated that the medical evidence establishes that Medendorp "had severe back pain, but her treatment records fails to reveal the type of significant clinical and laboratory abnormalities one would expect if she were in fact disabled." (Tr. 1142.) The ALJ noted that Medendorp's allegations as to her pain "appear out of proportion to the actual medical evidence of record, which shows that she was neurologically stable with only slight weakness of the right her [sic] extensor halluces longus following surgery," that she was taking Motrin for pain, and that the medical records did "not show that she was receiving any other treatment." (Tr. 1142.)

The ALJ also reviewed Medendorp's testimony at the hearing before the ALJ and considered his RFC determination "reflective of" that testimony. (Tr. 1144; *see* Tr. 1165–1177.) In addition, the ALJ considered the testimony and opinion of medical expert Dr. Francis in which Dr. Francis opined that Medendorp could have performed essentially a full range of light work with minimal exceptions on September 29 or 30, 1998. (Tr. 1142–1143; *see* Tr. 1177–1184.) As to Dr. Francis' opinions, the ALJ stated:

> Medical expert Dr. Francis testified that back surgery patients will continue to have some level of pain in the back, and the claimant's complaints of pain are not uncommon for a person who has had two back surgeries; however, he then opined that the claimant could have performed essentially a full range of light work with minimal exceptions. I recognize that the claimant may have [sic] experience some degree of pain or discomfort at times of overexertion, but even a moderate level of pain is not, by itself, incompatible with the performance of certain levels of sustained work activity. Here, neither the objective medical evidence nor any other non-medical evidence establishes that the claimant's ability to function was so severely impaired as to preclude the performance of all work activities. The record contains no objective signs of an incapacitating impairment, such as muscle atrophy or grossly abnormal neurological deficits. After considering all the

evidence, I have limited the claimant to light work with a sit/stand option, postural limitations, no operation of foot controls, no work at heights or around dangerous machinery, no exposure to vibrating machines, and to work in a climate controlled environment. Due to the claimant's clear preoccupation with the perception of pain and disability, I limited her to simple work. The medical evidence does not to [sic] support greater limitations through the date last insured.

    . . . .

    I called upon medical expert Dr. Francis for his professional assessment and opinion regarding the severity of the claimant's impairments. Dr. Francis summarized the medical record . . . . He opined that on the date last insured, the claimant was reasonably capable of performing light work, lifting and carrying 20 pounds occasionally and 10 pounds frequently, standing and walking 6 hours out of 8, and sitting 6 hours out of 8, with normal breaks; she was unable to climb ladders, ropes, or scaffolds but could perform other posturals frequently; she had no upper extremity limitations; and she was able to use foot controls two-thirds of the day. He opined that the claimant was basically able to perform a full range of light work with environmental limitations, including no work at unprotected heights and avoiding excessive cold, excessive industrial vibration, and exposure to hazardous or dangerous machinery with moving parts. I have given significant weight to Dr. Francis' opinion. Although Dr. Francis is not a treating or consulting physician, he reviewed the entire medical record, including new evidence provided by counsel as well as testimony presented at the hearing, before expressing his opinions. Furthermore, his opinion is consistent with the medical evidence through the date last insured.

(Tr. 1142, 1144.)

    Furthermore, the ALJ considered the opinions of the state agency medical consultants but gave little weight to their findings that there "is insufficient evidence through the date last insured." (Tr. 1144; *see* Tr. 29, 327, 341.) The ALJ stated that "[t]he residual functional capacity . . . is based on the updated medical evidence and is reflective of the claimant's testimony, which the State agency consultants did not have the benefit of reviewing. In addition, the ALJ considered the opinions of Scott Duemler, M.D. ("Dr. Duemler"), Medendorp's treating physician, but found

10

that they should be given no weight as "they do not address the period through the date last insured and do not address statutory blindness."[4]  (Tr. 1144.)

While Medendorp argues that the ALJ "succumbed to the temptation to play doctor" by "not clearly [basing] the RFC on any medical statements," the ALJ's RFC was, as noted above, based both on medical evidence and on the opinion of a medical expert.  (Pl.'s Br. at 6–7; *see* Tr. 828–829, 850, 852–853, 1141–1142, 1165–1184.)  Medendorp, citing to *Strickland v. Harris*, 615 F.2d 1103, 1109–1110 (5th Cir. 1980),[5] also argues that Dr. Francis' opinion did not constitute substantial evidence because Dr. Francis is a non-examining physician and "reports of non-examining doctors, taken alone, do not constitute substantial evidence."  (Pl.'s Br. at 6.) Medendorp claims that even if the ALJ did not err in relying on the opinions of Dr. Francis, the ALJ's RFC determination is still erroneous because it does not exactly match Dr. Francis' opinions in that the ALJ "adds the additional sit/stand option to the RFC, and adds more restrictive postural limitations."  (Pl.'s Br. at 6.)  Thus, according to Medendorp, the RFC is not supported by substantial evidence because the RFC is loosely based on a non-examining doctor's opinion.  (Pl.'s Br. at 6–7.)

The Court disagrees, however, as the ALJ specifically stated that the RFC is supported "by the record as a whole," which included Dr. Francis' opinion, Medendorp's complaints, as well as

---

[4] The ALJ specifically referenced Dr. Duemler's RFC determination dated October 9, 2009 ("October 2009 RFC determination) in which Dr. Duemler opined that Medendorp's limitations began to be disabling in the last two to three years, at least, and found, *inter alia*, that Medendorp could only sit for one hour and stand or walk for one-half hour during an eight-hour workday.  (Tr. 1144 (referencing Exhibit 8F); *see* Tr. 343–45.)  In addition, the ALJ referenced Dr. Duemler's Medical Statement Regarding Low Back Pain for Social Security Disability Claim as of September, 2009 ("September 2009 Medical Statement"), which was signed and dated on November 20, 2015, in which Dr. Duemler opined that Medendorp could, *inter alia*, stand for 15 minutes at one time and sit for thirty to sixty minutes at one time and work less than one hour per day.  (Tr. 1144 (referencing Exhibit 40F); *see* Tr. 2040–2041.)

[5] In *Strickland v. Harris*, the Fifth Circuit held that a non-examining physician's specific medical conclusions do not provide substantial evidence as a matter of law when they contradict findings made by an examining physician. *Strickland*, 615 F.2d at 1109–1110.

other evidence in the record. (Tr. 1144.) Moreover, in general, an ALJ may give more weight to a non-examining medical expert over a treating physician when the medical expert's testimony does not conflict with the other medical evidence and opinions in the record and, *inter alia*, the ALJ considers all opinions in the record and explains the weight given each. *See, e.g., Carson v. Berryhill*, 286 F. Supp. 3d 818, 832 (S.D. Tex. 2018) ("Of course, giving more weight to a medical expert over a treating physician is not error; in fact, it is the ALJ's decision to make."); *Villa v. Sullivan* ). In this case, the only medical opinion evidence in the record **before the ALJ that relates to the two-day relevant time period** is the opinion of Dr. Francis.[6] Dr. Francis' opinions do not conflict with Dr. Duemler's opinions because they relate to different time periods. In addition, the ALJ properly considered Dr. Duemler's opinions, as well as those of Dr. Francis and other medical opinions in the record, before deciding to give significant weight to Dr. Francis' opinions. Because the ALJ did not err in making the RFC determination, remand is not required.

## B.    <u>Treating Physician</u>

Medendorp next argues that the ALJ erred in rejecting two of Dr. Duemler's medical source statements. (Pl.'s Br. 7–9.) As to the first one, the September 2009 Medical Statement set forth in footnote 4, *supra*, Medendorp argues that the ALJ erred by failing to considering the factors set forth in 20 C.F.R. § 404.1527(c) prior to rejecting such statement.[7] (Pl.'s Br. at 7-9.) As to the

---

[6] The Court notes that, unlike most cases, Medendorp is seeking to prove she was disabled during **a two-day period, approximately twenty years ago**. As this case has already been remanded by the Court once, in 2014, Medendorp has been given multiple opportunities to produce medical records and opinion evidence in support of her claims.

[7] Medendorp also mentions the following medical opinions: (1) a statement dated September 18, 1992 in which Peter Herkner, M.D., stated that Medendorp was "functionally impaired from working" (Pl.'s Br. at 7; Tr. 1021); (2) a medical source statement dated June 4, 1992 in which Deborah Vos Young, a registered occupational therapist, opined that Medendorp could sit 45 minutes, stand 60 minutes, was unable to squat, could lift 15 pounds from floor to waist, and 10 pounds from waste [sic] to shoulder, and 5 pounds from shoulder to overhead (Pl.'s Br. at 7; *see* Tr. 1099–1109); and (3) a statement dated October 20, 1992 in which Perry Greene, M.D., opined that Medendorp is "not able to do a lot of bending, lifting, laundry or heavy things around the house" (Pl.'s Br. at 7; *see* Tr. 1118). Even assuming without deciding that the ALJ erred in not considering the factors set forth in 20 C.F.R. 1527 in evaluating the above listed opinions, any such error is harmless as, *inter alia*, their opinions relate to a time

second one, which is titled "§ 8:18 Medical Statement Regarding Low Back Pain for Social Security Disability Claim as of September, 1998 ("1998 Medical Statement")," Medendorp argues that the ALJ erred by wholly failing to even mention, much less discuss, such statement. (Pl.'s Br. at 7–9.)

Controlling weight is assigned to the opinion of a treating physician if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (per curiam); *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir. 1983). While opinions on the ultimate issue of disability status are reserved to the ALJ, he must consider all medical opinions. 20 C.F.R. § 404.1527(b), (d). Because the determination of disability always remains the province of the ALJ, he can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett*, 67 F.3d at 566; *Greenspan*, 38 F.3d at 237; *Muse*, 925 F.2d at 790. Conclusory statements to the effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions, and are not entitled to any special significance. *See* 20 C.F.R. § 404.1527(d)(1), (d)(3); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (per curiam).

In *Newton v. Apfel*, the Fifth Circuit Court of Appeals held that "absent reliable medical evidence from a treating or examining specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527." *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). Under the statutory analysis, the ALJ must evaluate the following factors: (1) examining

period approximately six years prior to the relevant time period and prior to Medendorp's corrective surgeries in 1993 and 1995.

13

relationship; (2) treatment relationship, including the length, nature, and extent of the treatment relationship, as well as the frequency of the examination(s); (3) supportability; (4) consistency; (5) specialization; and (6) other factors which "tend to support or contradict the opinion." 20 C.F.R. § 404.1527(c); *see* SSR 96-6p, 1996 WL 374180, at *3 (S.S.A., July 2, 1996); SSR 96-2p, 1996 WL 374188, at *4 (S.S.A. July 2, 1996).

Pursuant to *Newton*, however, the ALJ is required to perform a detailed analysis of the treating physician's views under the factors set forth in 20 C.F.R. § 404.1527(c) only if there is no reliable medical evidence from another treating or examining physician that controverts those views. *See Newton*, 209 F.3d at 455–57. An ALJ does not have to perform a detailed analysis under the factors in the regulation "where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another," as well as in cases in which "the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *Id.* at 458; *see Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 507–11 (S.D. Tex. 2003); *Contreras v. Massanari*, No. 1:00-CV-242-C, 2001 WL 520815, at *4 (N.D. Tex. May 14, 2001) ("The Court's decision in *Newton* is limited to circumstances where the administrative law judge summarily rejects the opinions of a claimant's treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant.")

As to the September 2009 Medical Statement, the Court finds that the ALJ properly considered each of the six factors outlined in 20 C.F.R. § 404.1527(c) prior to rejecting such statement. To begin with, the ALJ specifically stated, "In evaluating Dr. Duemler's opinions, I considered the length, nature, and extent of the treating relationship, the frequency of examinations, the supportability by other evidence given by the medical source, the extent of his

explanation, and the consistency with the record as a whole." (Tr. 1144 (citing 20 C.F.R. § 404.1527(d); SSR 96-2p; SSR 96-5p.) As to factors one and two, under which the ALJ evaluates the examining and treatment relationship between Medendorp and Dr. Duemler, the ALJ acknowledged Dr. Duemler as Medendorp's "treating physician" and referred to Dr. Duemler's September 2009 Medical statement as well as Dr. Duemler's October 9, 2009 RFC Determination, also set forth in footnote 4, *supra.* (Tr. 1144; *see* Tr. 342–345, 2040–41.) As to factors three, four, and six, under which the ALJ should evaluate the supportability and consistency of the physician's opinion, as well as any other factors that "tend to support or contradict the opinion," the ALJ noted that "[t]here is very little medical evidence to support the claimant's complaints through the date last insured" and that "[m]ost of the medical evidence addresses the period after the date last insured and is not relevant to a finding of disability through the date last insured." The ALJ also, as explained above, analyzed the other medical and other evidence in the record and explained why it was more supportive of his RFC and disability determination.

As to factor five, more weight is generally given "to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(5). Based on the evidence in the record, Dr. Duemler is a family physician, not a specialist, so this factor was not relevant. Because the ALJ properly considered the factors set forth in 20 C.F.R. 404.1527(c) prior to rejecting the opinions of Dr. Duemler, remand on this issue is not required.

While Medendorp is correct in claiming that the ALJ did not reference Dr. Duemler's opinion in the 1998 Medical Statement, such failure was not an error. A review of the record indicates that the 1998 Medical Statement was submitted to the Appeals Council on or around May 24, 2016 and was thoroughly considered by the Appeals Council. (Tr. 1122; *see* Tr. 2042–45.)

15

The ALJ could not have referenced, much less considered, the 1998 Medical Statement because it was not before him at the time he issued his ALJ decision on December 21, 2015. Consequently, the ALJ did not err, and remand is not required.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED
## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections to the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above the specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **October 30, 2018** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendations. It is further **ORDERED** that if objections are filed

and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED October 16, 2018.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE